May it please the court, I'm Mr. Irie and I'd like to introduce Stephen Felsen, my co-counsel. I'd like to save three minutes if you please. There can be no more valuable exculpatory evidence than a confidential informant making an eyewitness identification of suspect X on day one and on day two identifying the defendant from a photograph in the police station. There can be no better test of materiality of these conflicting and opposite identifications than what happened here. Let me ask you a question about that because I was confused at first when I was reading this because I thought the claim was that when the CI identified the person on the video that turned out not to be the crock one that he described him as Emmett and Emmett is obviously somebody else but when you look at it closely he didn't say Emmett he said he identified the person as the dope dealer. The drug dealer. I think it's the dope dealer. Yes. Same thing. But the point is he didn't say the big guy in the green shirt is Emmett. He said he's the dope dealer. Now he clearly is a dope dealer he just happened to be a runner apparently for Emmett, whoever Emmett is. Well your honor. So how I'm trying to figure out even how that's such a big deal. Well the rank and the course in his deposition confirmed that Emmett was making a personal appearance there at the scene. There's another guy that appeared. Is the other guy the thin shirtless person? Is that Emmett or is Emmett actually a third person? No it's all over Nelson's deposition that the CI identified the guy in the in the green shirt as the drug dealer. Is that and that's Emmett the guy on the green shirt is Emmett? Yeah. Well so what I'm wondering is how you get a Brady claim even applicable to this situation. Well. I mean your clients not somebody who was tried convicted and the prosecution withheld exculpatory evidence. I mean he's a guy whose charges were dismissed. Do you know of any case law that applies Brady in that situation? I don't think any of the cases have ever addressed a situation where exculpatory evidence was withheld which resulted in an transmitted to the prosecutor. Isn't that because Brady doesn't go to indictments? Brady goes to the fairness of a trial and there wasn't a trial. I think Brady goes to whenever there is a significant injury and in at least 53 days of jail time. I don't think. As Judge Gibbons asked you what's what's the support for Brady going to quote a significant injury and quote the test that you just set forth? What is the test for a significant injury? No what is the what is the authority for Brady covering a significant injury? There is I we have found no case specifically where Brady was applied to an indictment situation but no other no cases have actually considered that issue. Is that because your claim is not a Brady claim your claim if you have one is a malicious prosecution claim although the district court didn't think you had one of those either? Your honor I believe we meet all of the criteria of a Brady claim. Like what? Exculpatory evidence that was obviously material and that was withheld from the prosecutor. Withheld implies some deliberate I mean an ordinarily in the Brady context we're talking about something that where there was some intentional withholding. What's the indication here that there was intentional withholding as opposed to a mere mistake? I mean mistakes in investigations happen all the time and I'm not aware that Brady gives any protection there. Two things Judge Gibbons I don't believe intentionality is a requirement of Brady and secondly. It may not be but I mean certainly that didn't happen here. Well officer Nelson knew exactly what was being withheld I mean he he was the one who did the filming he knew that that that the person in the film was not Snow and. Let me approach it from a you don't have any cases that would extend Brady to something along the lines of what you're arguing here. We have cases reported cases that are binding on this panel that say that if exculpatory evidence is disclosed quote in time for trial end quote there is no constitutional violation. So when you say there's no case to consider it that case I would say is squarely on point and how do we as a panel then not follow that case? That's the case of United States versus Creighton. Well I the context is different that was a criminal criminal case and we have a civil case here and this in this the result in our case was without a trial yes there was 53 days of incarceration. How can you distinguish 10 days of jail time after a trial versus 53 days of jail time you know after an indictment. Mr. Newman did you allege a Brady claim in the complaint? The Brady no the Brady claim was fully briefed below and and it's a part of this case and I think we've satisfied. How do things get to be a part of the case when they're not pled? Well I mean we didn't say Brady in the complaint but I think we alleged in the whole course of the case was premised on our Brady claim. It was there in the depositions it was the in the briefs in the district court below and we have met I believe the requirements for inclusion of an issue and in this case. Let me go back to another authority that Sixth Circuit has you distinguish the one I asked you about first by saying well that's a criminal trial okay. How about cases that are civil cases that say that Brady only applies if it undermines the confidence in the verdict. There is no verdict. No verdict. So how do you get around those cases? Well your honor if we don't recognize Brady in a civil context when the when a defendant is able to overcome the the issue. I'm asking you a more narrow question. I'm not asking if we do this or if we don't do this. Okay. We're a panel got the panel rule you know that we're bound by the prior published decisions of this court and they clearly say it applies if there's a verdict. So how do we get around those cases? Well I I don't know what case you're setting. Johnson versus Mitchell. I don't know. Quoting Kyles versus Whitley. Well. Which is a Supreme Court case. Well I I don't know if that case was considering anything like the facts that we have here. Well certainly there are plenty of cases that have facts similar to yours and perhaps the fact that a Brady claim has never been recognized in that context means that one doesn't exist. Well I appreciate that. Are you are you arguing this because you really think we have the authority to recognize a Brady violation in this context? Are you really just preserving this because you want to make an en banc petition and try to get our earlier cases changed? Judge McGeek, I honestly believe that this panel has has the authority to apply Brady in this in this instance. The answer is yes. And because you've chosen to start with this do you think Brady is you the I have two minutes left. You didn't ask that. I said is that the strongest of your claims? I believe so your honor. Okay. Okay I need to save my time here. I have only two minutes left on the rebuttal. Well I think your that light has to be red before you only have your rebuttal. Okay well then let me claim. Obviously a significant factor in probable cause is the fact that there was a total misidentification by the CI and and that is a huge factor in dissolving the... Mr. Newman what what evidence do you have that that there was any false testimony or reckless testimony presented to the Nelson according to the lower court testified before the grand jury. He did not talk to the the prosecutors ahead of time and... That's not true. You're misstating it I believe. There's no evidence who testified before the grand jury. There's a subpoena to to Nelson and Nelson and the other guys say they don't remember which one testified. What I said Judge McGeek was the lower court presumed that Nelson did testify before the grand jury. That's what I said. No that's not exactly what you said. That's not what you said. You said that the lower court found that Nelson had testified and it's not true. Presumed. Presumed. And the prosecutor said in discovery that that he had not been provided with any exculpatory evidence. So you put those three facts together and I think a reasonable jury could presume that Nelson did not point out to the grand jury the the misidentification that was done later on December 9. Other items of relating to the probable cause. The CI lived with Snow but the CI initially did not know Snow's name. There were telephone calls setting up the drug deals to numbers. One number was 3050169 and that number was not traced in any way to Snow. Snow denied having a number that number. Likewise with the other call setting up the drug deal there was a specific telephone number given and no identification was made of Snow having anything to do with that telephone number. And most importantly. What do we do with the lower courts conclusion that says additionally since the grand jury test transcript is not included in the record plaintiff has not shown that Nelson or Rankin falsely or recklessly told the grand jury that the man in the green shirt was Emmett. End quote. Well that's inconsistent with the fact that the prosecutor in the discovery provided to the defendant to Mr. Snow's attorney said that they had no exculpatory evidence. That's totally inconsistent with that your honor. How can something be inconsistent with a grand jury transcript when you don't have the transcript and we don't know what it says? Well I'm not I'm saying that if a reasonable juror could could find that the proper identification testimony was not been presented the same thing would have happened that happened on December 9th when the prosecutor saw the video went upstairs and saw Snow and said oops we can't we can't prosecute this case. There's no case. Now had that been evidence been presented to the grand jury there would have been no indictment and that's the whole that's our case. Your time is up. Good morning your honors. Kurt Eyrie on behalf of Detective Nelson and Lieutenant Rankin. I think the court rightly recognizes that is an initial matter in this case that the discrepancy that appellant claims existed doesn't exist. On the 15th of January there was an individual in green pants and a hat who was identified as the dope dealer by the CI. He was not at any time identified as Emmett. As we explained in our brief then Detective Nelson assumed mistakenly in his debriefing with the CI that the individual that was in the video was Emmett and he wrote that incorrectly. But there was no identification of Emmett at any point in time during the discussion with Detective Nelson and the CI on the 15th. Who's the other guy in the video is that Emmett or do we don't know? We don't know who that individual is he happened to be somebody walking down the street. He's not Emmett though. No no he's an individual I think he had white shorts on and no shirt and he just approached the CI and I think they shook hands at one point. On the grand jury question I'm just curious about this I should know the answer but I don't. Would the grand jury testimony be available in connection with a civil case like that? I mean I know it's normally sealed but can you could they have gotten it if they asked for it? I don't know the exact answer to that your honor. It's my understanding that it's you know it's it's obviously a secret proceeding. There must be some way to get it if you if an element of a malicious prosecution is that you testified falsely. It must be available somehow isn't it? Right I would assume it exists I mean they they obviously transcribed those. So so is it your belief they just didn't go through the procedure necessary to obtain it? That's that's what we're arguing yes your honor. And to get back to my initial point is that the whole crux of this argument both on their Brady claim and their malicious prosecution claim is that this individual was misidentified by the by the CI on the 15th. Well that's just not the case as you pointed out Judge McKeek. He was only referred to as the dope dealer. It wasn't until the following day that that Detective Nelson through further investigation was able to corroborate the address that the CI gave him as being a residence where Snow and his girlfriend lived. He then showed a photo to the CI didn't didn't say who it was he showed a photo of Snow and Snow's girlfriend and said who is this and the CI immediately identified that's Emmett and that's Emmett's girlfriend. So even assuming that he had said the guy in the green shirt or pants whatever it was was Emmett. Afterwards he identified somebody else as Emmett. Well his first identification of Emmett was actually on the next day when he was shown the photographs. And that and the second person that was identified as Emmett is is the guy that then made the subsequent sales right? Yeah is the appellant the one who was contacted every time afterwards on the 30th they had another investigate another drug buy and on the on the 13th another drug buy and then on the the 30th of course was there's another part of the debriefing where he says he sees Maurice Snow come down from the residence and show up at the at the drive-thru where convenience store right after the transaction takes place and he watches the courier give Maurice Snow the money then Maurice Snow walks back to his apartment building. So just out of curiosity I mean on one day they arrest the green shirt guy and then the next day the CI identifies somebody that looks quite a bit different as Emmett the drug dealer. So what I'm just curious why at that point didn't it occur to one of the other of these detectives they had the wrong guy in the lockup? Well there was no arrest on the on the first day on the 15th and it was the understanding of Detective Nelson when he went through the debriefing he he filmed the video and there was another video filmed by Lieutenant Rankin of what occurred between the individual and the green shirt and hat and afterwards during the debriefing the CI is So in other words he would have had to have thought that wait a minute you pick this guy's picture out on day two that's different than the guy you pointed to on day one now I guess that's the crux of the question. Yeah yeah at first they didn't they didn't this was that was the very first day of the investigation the investigation went on for four weeks and it wasn't until subsequent drug buys that they realized that he was sending couriers each time. So the first day when he when he said the dope dealer Detective Nelson making it made a mistaken assumption that he was talking about Emmett and recorded it that day it was not later until in each of these drug buys that he's sending a courier each time and that's realized that's and it's being realized that's what he's doing. So the smoking gun here then seems to be that because you you didn't prosecute Emmett that therefore there's some sort of constitutional violation. That seems to be appellant's argument that that both of our officers testified that they believe there's more than enough probable cause to prosecute this guy based on all the everything they've obtained and we've listed in our brief. So why'd you let him go? Well at the time Lieutenant Nelson I'm sorry Lieutenant Rankin made the call he was contacted by another officer Schley who was at the jail and said hey there looks to be a discrepancy in the trial preparation report the first one that was made on the 15th and the guy in the jail cell and and Detective Nelson or I'm sorry Lieutenant Rankin who was off duty said look I did I'm not there I'm talking you over the phone it looks like if we made an error in the report let's go ahead and release him and and we'll talk circle back with the CI and see if we made an error in the investigation. He subsequently he testified that he subsequently tried to circle back with the CI they weren't able to get in touch with him and they moved on to other investigations. So they I mean but presumably that decision was made based on their intent to rely on the video for the case. You're talking about the officers to rely on that the prosecution? The district judge says that what the detective testified he didn't rely on the video. And you're right about that the Detective Nelson said he did not rely on the video for the identification. The video was recorded and downloaded that was not the basis of his identification for Emmett. Really what I was asking was whether that the I don't know I guess it really doesn't matter but it seemed to me that the reason you would dismiss the charges is because well the reasons would be if you knew you didn't have the testimony of the CI then all you basically got is the video and that doesn't show the guy you've got in custody. Well they had they had all the videos I mean this is obviously a four-week investigation they had all the videos they had the CI's testimony that the that Maurice Snow appeared on the scene and on the on the last day of investigation and took the money. Is Mr. Snow on the video? Or was that just the CI's testimony? That was the CI's testimony. The CI is unavailable. The CI well at this point I don't know what what the what the. You said they circled back and he. Well right this was this was yeah this was Detective or Lieutenant Rankin's testimony was that when he was contacted by Schley who was at the jail cell said and Schley who was not directly involved in this investigation said look there seems to be a discrepancy and Lieutenant Rankin said hey you know let's err on the side of caution and then we'll try to follow up and and see if we really made a mistake here. Did you say a minute ago that Snow actually does appear on a later video? No if I did say that I I apologize what what happens on the third on the 13th of August which is the last day of the investigation he again sends runners to the corner and a transaction is made. His residence is actually up the street from the convenience store. Snow's residence 5613 Ralston. The CI and unfortunately the way that they had the undercover cameras set up at this point it's it's blocked off from the building so you don't see Snow coming down the street but the CI says as the after right after the transaction was made the two couriers are walking across the street. Maurice Snow runs down from his house on Ralston meets the current one of the couriers at the door of the convenience store and has exchanged and he gives him the buy money which the CI had just given the courier and then Snow goes back to his residence at on Ralston. But without the CI's testimony you have no case. Well I I would say that the CI is a very important part of our case yeah and and and it's not to say the CI would have been unavailable for trial I'm just saying that that's that's what was the initial decision that Lieutenant Rankin at the time. Are there any further questions? Thank you. Just a couple of points here. Please remember Judge McKeague that on December 9 Nelson himself was in court he looked at the video and told the prosecutor there's your guy referring to the July 15 video and obviously relying on what the CI told him pointing at the guy in the green green shirt. With respect to. You're saying this I appreciate that you're saying this thing is in connection with malicious prosecution now? And Brady. Because because. I still I still don't see how we get around you have to prove as a part of your malicious prosecution case given that there was an indictment by a grand jury that there was false testimony and when we don't know what the that says a jury can infer how somebody testified before a grand jury when you don't have the grand jury testimony. I didn't bring that case this morning. Are you telling me that case exists? I don't know. You don't know. Okay so we don't have a case that extends Brady to this context and we don't have a case that gets you around the lack of the grand jury testimony. Well on the incarceration following indictment I mean that the case the main case cited by the appellee in this case is this McCune case 842 Fed Second in the Sixth Circuit and I think that's one of the cases that you may have in your book and that's a 1988 case your honor and that case and a lot of these no harm no foul cases where they say that no Brady violation in the absence of a conviction predate the recognition by this court of a civil Brady right. So I think there the court recognizes a civil Brady right are you relying upon that would suggest that it applies when there hasn't been a trial? I don't well without a trial part I think is an issue that you're going to have to decide and the Sixth Circuit's going to have to decide whether or not we do have a claim without a trial but of course we're relying on Muldown and the other cases that we studied in our case which state in very vigorous language that Brady is very much alive in a civil context. I see zeros can I say one more last thing? Well your time's up. I guess we'll consider the arguments both of you have made and consider the case carefully. Thank you.